UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 12-49-HRW

CORRIGAN TLP, LLC,

PLAINTIFF,

v.   **MEMORANDUM OPINION AND ORDER**

CHRIS H. BOERGER,                                                          DEFENDANT.

This matter is before the Court upon Plaintiff Corrigan TLP, LLC's Motion for Partial Summary Judgment [Docket No. 36] and Defendant Chris H. Boerger's Motion for Summary Judgment [Docket No. 48]. The motions have been fully briefed by the parties [Docket Nos. 50 and 51]. For the reasons set forth herein, the Court finds that Corrigan TLP, LLC is entitled to partial summary judgment and Defendant Chris H. Boerger is not entitled to summary judgment.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

This action involves a dispute over ownership of about 340 acres of remote, wild timber land at the head of Hamilton Branch in Lewis County, Kentucky.

Corrigan TLP, LLC ("Corrigan") purchased thousands of acres of land located in several Kentucky counties, including Lewis County, on December 21, 2007, by a deed of record in Deed Book 220, Page 491, in the Lewis County Clerk's Office ("Corrigan Deed"). [Docket No. 37-13 and 15, pages 578-796, Special Warranty Deed between Boone Parklands, LLC and Corrigan TLP, LLC, stamped Corrigan Chain]. The Corrigan Deed describes many distinct tracts of real property, including the one at issue in this civil action. The relevant property is in Lewis County and is referred to as Tract 4 of the "Huber Parcels." [*Id.* at pages 694-698]. This tract, commonly

referred to as "Huber Tract 4," describes approximately 5,673 acres of land and is the tract at issue in this action and fully encompasses the 340 acres claimed by Boerger.

Boerger acquired title to the subject land by deed dated April 3, 2009 and of record in Deed Book 225, page 32, in the Lewis County Clerk's Office ("Boerger Deed"). The property was conveyed from Fite Logging, LLC, which is a corporate alter ego of Boerger's ex-wife Holly Fite, and the deed recited a purchase price of $125,000.00 [Docket No. 36-3]. The Boerger Deed describes 340.255 acres of land using a description prepared by Michael D. Ruggles, a surveyor, in April of 2008.

There is no dispute that Corrigan's Deed fully encompasses all of the property described in Boerger's Deed. Indeed, included in the description of the property in the Boerger Deed is the note, "[d]uring the course of this survey, it was discovered that the Corrigan TLP, LLC, deed, D.B. 220, Pg. 491, takes in the same area as the Fite Logging, LLC deed, D.B. 221 Pg. 574." [Docket No. 36-3]. Mike Ruggles, testified that in the course of his survey for Boerger, he reviewed and plotted out the boundaries of Huber Tract 4 from the Corrigan Deed and concluded that the Corrigan Deed called for the same property he surveyed and described in Boerger's Deed. [Deposition of Mike Ruggles, Docket No. 36-5, pp. 45-47, 53-56.]

There can also be no dispute that Boerger knew that title to the property was subject to dispute before he acquired it. Indeed, prior to his purchase, his surveyor, Mr. Ruggles, required him to sign a letter acknowledging the clouded title:

> [P]lease understand and be advised that the property Fite Logging, LLC is claiming under D.B. 221 Pg. 574, is also in part or whole claimed by Corrigan, TLP, LLC, D.B. 22
> Pg. 491 and under this deed, it is clear that their deed takes in the same property to which Fite Logging LLC is claiming.

2

> Signing this document states that you are aware, understand and do acknowledge that their(sic) is a problem between the 2 deeds and that this Surveyor makes no guarantees to the 340.255 acre survey that I have performed.

[Letter from Mike Ruggles, Surveyor, to Chris Boerger, Defendant, dated February 17, 2009, Docket No. 36-7 and Ruggles Depo., Docket No. 36-5, pp. 77-78.] Boerger acknowledged his signature on the letter and testified that he was aware that Corrigan's predecessors in title disputed his predecessors' claim to ownership of the property described in his deed. [Deposition of Chris Boerger, Docket No. 36-4, pp. 103 and 75-76].

Due to the disputed ownership of the area claimed by both the Boerger's Deed and described in Huber Tract 4 of Corrigan's Deed, Corrigan filed this action asserting the following claims: (1) a declaration of rights with respect to ownership of the disputed area; (2) a claim to quiet title to the disputed area in Corrigan; (3) slander of title; and (4) trespass. [Complaint, Docket No. 1, pp. 12-14.] Boerger filed a counterclaim asserting ownership of the property and requesting that the Court quiet title in him. He asserts that the predecessors to his deed adversely possessed the property at some point before 1957.

Corrigan seeks judgment in its favor as to its claim for declaration of rights with respect to ownership of the disputed area and to quiet title to the disputed area in Corrigan. Boerger seeks summary judgment in his favor as to his claim of adverse possession.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. The moving party

"bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). " 'The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [non-moving party].' " *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). The court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Id.*

## III. ANALYSIS

Boerger does not contest Corrigan's superior record title. He frames the single issue in this case as "whether Boerger and/or his predecessors established title to the property by adverse possession." [Defendant's Memorandum in Support of Motion for Summary Judgment and Response to Plaintiff's Motion for Partial Summary Judgment, Document No. 46-1, p. 5.]

Adverse possession is a legal doctrine that permits a trespasser who occupies the real property of another in an open, notorious, visible, continuous, and adverse manner for a specified

4

period of time to obtain legal record title to such property. The trespasser does not merely gain permission to continue to trespass on another's property, nor does the trespasser gain the right to purchase the property from the true owner at fair market value. Instead, in a legal sleight of hand, the result of successful adverse possession is an outright involuntary and uncompensated transfer of ownership from the original owner to the unlawful possessor.

To establish title by way of adverse possession, the party claiming adverse possession must demonstrate by clear and convincing evidence "possession of disputed property under a claim of right that is hostile to the title owner[']s interest." *Phillips v. Akers*, 103 S.W.3d 705, 708 (Ky. App. 2002). The "possession must be shown to be actual, open and notorious, exclusive, and continuous for a period of fifteen years." *Id.* (*citing Tartar v. Tucker*, 280 S.W.2d 150, 152 (Ky.1955); *Creech v. Miniard*, 408 S.W.2d 432, 436 (Ky.1965); KRS 413.010. To constitute "open and notorious" possession, the possessor must " 'openly evince a purpose to hold dominion over the property with such hostility that will give the non-possessory owner notice of the adverse claim.' " *Phillips*, 103 S.W.3d at 708 (*quoting Appalachian Reg'l Healthcare, Inc. v. Royal Crown Bottling Co.*, 824 S.W.2d 878, 880 (Ky.1992)).

> As noted by Corrigan, acquiring title by adverse possession is an uphill battle.
>
> To start the running of the statute of limitations, the disseizor must have an actual possession; it must be an open, notorious, and visible possession; it must be a selfish or exclusive possession, that is the disseizor must hold possession for himself to the exclusion of the true owner, and all others; it must be a hostile possession, not only as against the true owner but as against the world; it must be a definite possession, that is its confines must be marked by an inclosure or other plainly visible indications; the disseizor must fly his flag, and indicate the lines of his dominion, the extent of his possession must be evident; and it must be a possession under a claim by the disseizor of ownership in himself, so notorious as to amount to a constructive notice of its adverseness. When all these things coexist, the running of the statute starts. To keep it running the disseizor must in

> this commonwealth maintain that status in full vigor in all its elements for every hour of every day for 15 years....

*Moore v. Stills*, 307 S.W.3d 71, 77 (Ky. 2010) (quoting *Finn v. Blakeman*, 71 S.W.2d 961, 969 (Ky. 1934)).

The task of this Court is to review Boerger's entire chain of title, beginning with a 1957 parent deed alleging an adverse possession and running through the present, to determine whether adverse possession is supported at any point.

We begin with a 1957 deed between Lomer And Arabelle Dyer, grantors, and Oscar Dyer, grantee. The deed on March 30, 1957, and recorded in Deed Book 89, Page 357 (the "Dyer Deed"), which alleged that the grantors held the property "in peaceable, open and adverse and notorious and uninterrupted possession ... for twenty years." [Dyer Deed, Exhibit 36-3, pages stamped Boerger Chain 1-2.] However, merely incanting the words "adverse possession" is not enough; merely filing a deed describing a tract of property cannot replace actual, open, notorious, and hostile possession of the land:

> A person who has under a good title constructive possession of a boundary of land is not required to take notice of subsequent deeds or patents that may be acquired by strangers to his title, or to look to the records for the purpose of ascertaining if any person has subsequently secured a deed or a patent covering the land embraced by his senior patent. He need only look to the land itself. So long as the land itself is free from actual intrusion, his title and constructive possession will remain undisturbed and unaffected.

*Brewer v. War Fork Land Co.*, 189 S.W. 717, 719 (Ky. 1916).

The Dyer Deed provides no specific facts to support adverse possession. The deed does not identify any acts to establish the Dyer's actual possession of the property, when the possession began, what acts made the possession exclusive, or why the true owner should have been placed on notice of the adverse possession.

In an effort to bolster his argument in this regard, Boerger offers the testimony of Orville Dyer, a cousin of the Dyer's. During his deposition, Mr. Dyer testified that his cousins, Lomer and Oscar Dyer (the parties to the Dyer Deed), did not own the property they claimed and simply cut timber from it occasionally and later filed a deed believing that no one else owned it. [Deposition of Orville Dyer, Docket No. 50-1, pp. 14-18, 22-23.] Mr. Dyer testified that he did not know the boundaries claimed by Lomer and Oscar Dyer in the deed they filed. [*Id.,* p. 12.] Indeed, when questioned about the deed they filed, Mr. Dyer responded "I don't know anything about what Lomer and Oscar done." [*Id.,*, p. 9.] He further testified that someone else other than the Dyers "opened up a dump up there for the City, you know, to haul their garbage and stuff up there." [*Id.*, p. 16.] He also testified many people cut timber from the property: "You could find 20 different people that's cut timber out of Hamilton Branch. They just went up in there and cut it, because nobody never had no deed for it, and they just went up there and cut it and logged it." [*Id.,* p. 11.] Thus, rather than supporting Boerger's argument, Mr. Dyer's testimony actually undercuts it and belie any claim regarding exclusivity, which is a material element of adverse possession. The law requires that possession be "selfish or exclusive possession, that is the disseizor must hold possession for himself to the exclusion of the true owner, and all others." *Moore,* 307 S.W.3d at 77. Mr. Dyer painted a picture akin to a free-for-all on the property in question.

Boerger also relies upon is a vague statement in a 1940 deed from Bruce Pugh to Ed Rand (found in Corrigan's chain of title), which conveys a right to "take all proper steps to enforce abandonment of any lands not heretofore sold by him, by deed or conveyance, to be found of record, and now in the possession of others...." This conveyance of the right to enforce

7

abandonment, which appears in a deed describing some 4,000 acres of property, does state that anyone is in possession of the 200 acres later described in the Dyer Deed and does not state that any property being conveyed is subject to an adverse claim. It is not proof of any adverse possession, much less adverse possession by Boerger's predecessors.

Boerger further relies upon similar statements in a deed from Kinniconick Forestry, Inc. to New Forestry, LLC dated August 21, 1997. These statements likewise fail to specifically reference the disputed area or confirm that the area was actually under an adverse possession claim.

The next link in the chain is the 1959 purchase of the disputed area from Oscar Dyer by Ernest Lee. Boerger offers Mr. Dyer's testimony in this regard. However, he testified that the Lees never lived on Hamilton Branch and he did not have any knowledge regarding what, if any, use the Lees made of the property. [Deposition of Orville Dyer, Docket No. 50-1, pp. 14-18, 22-23.]

The only other evidence Boerger submits regarding the Lees' use of the property is inadmissible hearsay testimony from Barry Fite, his former father-in-law and predecessor-intitle. Mr. Fite's first exposure to the disputed area was in 1997, and he has no personal knowledge of the Lees' use of the property. [Deposition of Barry Fite, Docket No. 50-2,, pp. 19, 22-24.] Nevertheless, Mr. Fite claims that others told him that the Lees allowed Lomer and Oscar Dyer and another individual to cut timber from the property after they purchased the Dyer Deed. [Fite Depo., Exhibit 2, pp. 22-24.]. It is axiomatic that hearsay is not admissible to create a factual issue on summary judgment. *Wilry v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994). Even if this Court were to commit the reversible error of admitting the hearsay, testimony that the property

"was logged" at some undetermined point, without more, cannot establish adverse possession.

Mr. Lee and his wife held the deed until 1997, when Alice Lee conveyed it to Homer Logan. According to Boerger, the land changed hands seven more times before Corrigan purchased it. Less than 15 years elapsed between Logan's purchase and the filing of this suit, May 25, 2012. Therefore, Boerger cannot establish that any activities by any recent owners lasted for the statutorily-required 15-year period.

Even if this Court were to disregard the requirement of 15 years, Boerger's evidence of occasional logging and hunting in the intervening years between Homer Logan's and Corrigan's ownership of the property, these are not sufficient activities to ripen into adverse possession under Kentucky law. recreational and sporadic uses of wild lands do not suffice as possession, even if such acts continued for the statutory period. *Moore*, 307 S.W.3d at 79 ("[U]se of the disputed property for hunting, fishing, and other recreation and their one-time removal of timber are indistinguishable from these other uses [masting of hogs, ranging of cattle, conducting of a sugar camp, operation of a water mill, cutting of bushes and hay, etc.] which have been held not to establish 'actual' possession.").

Boerger's motion attempts to cobble together evidence of sporadic trespasses on the property occurring over more than 80 years to prove adverse possession. This piecemeal approach defies the very foundation of adverse possession - clear, **continuous** possession. This is exactly the evidence Boerger lacks; he cannot point to evidence of any single person's possession meeting all elements of adverse possession for 15 years.

Boerger's request for additional time in which to conduct discovery is not well taken. He offers no compelling reason to prolong resolution of this matter.

Based upon the foregoing, the Court finds that Boerger's deed is void.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff Corrigan TLP, LLC's Motion for Partial Summary Judgment [Docket No. 36] be **SUSTAINED** and Defendant Chris H. Boerger's Motion for Summary Judgment [Docket No. 48] be **OVERRULED**.

This 24th\ day of March, 2014.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge